IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAECEO DICKEY, # B-16381,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| vs.  ) | Case No. 14-cv-1024-NJR |
| ) | |
| RICHARD HARRINGTON,  ) | |
| C/O BEBOUT, C/O HOLMES,  ) | |
| SGT. EALY, NURSE STEPHANIE,  ) | |
| and NURSE (Med Tech) MISSY,  ) | |
| ) | |
| Defendants.  ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, based on events that occurred while he was confined at Menard Correctional Center ("Menard").[1] In a nutshell, Plaintiff claims that three of the Defendants severely beat him while he was handcuffed. Following the beating, he was denied adequate medical care and given two years in segregation on allegedly false disciplinary charges. In addition to the civil rights claims, Plaintiff asserts state law tort claims.

According to the complaint, on or about October 17, 2013, Plaintiff left his cell to walk to dinner along with other inmates. Defendant Ealy ordered him out of the line and told him to place his hands on top of his head (Doc. 1, p. 9). Plaintiff complied, but then he noticed that when he left his cell, he had inadvertently left his hat facing backwards, which is prohibited. He turned the hat around to face the bill forward. Defendant Ealy ordered Plaintiff back to his cell.

---

[1] Plaintiff is serving a 50-year sentence for murder and a 15-year sentence for aggravated battery.

When he told Plaintiff he would not be allowed to get a food tray, Plaintiff said, "That['s] crazy." *Id.*

Plaintiff started back toward the cell, but Defendant Ealy suddenly grabbed his wrist, and Defendant Bebout grabbed his other hand. Both officers painfully twisted Plaintiff's arms and forced him to the floor. Defendant Holmes and several other unknown officers got on top of Plaintiff, pressing on his back and legs with their knees and feet to inflict more pain (Doc. 1, p. 10). They placed him in handcuffs and continued to violently twist and pull on Plaintiff's arms and hands. Plaintiff asserts he offered no resistance at any time. Defendant Holmes then kneed Plaintiff in the face, ribcage, and back more than ten times. Defendant Bebout punched Plaintiff in the face with his fist.

The officers rammed Plaintiff's head and shoulders into the stair rails and walls as they transported him through the prison, causing him to lose consciousness (Doc. 1, p. 11). They ended up at the infirmary, where they again slammed him against the wall and door frame, and where Defendant Holmes again kneed Plaintiff in the right side of his face.

At the direction of Defendant Nurse Stephanie, the officers placed Plaintiff on an examination table. They positioned him face-down on his knees, and the guards pulled his handcuffs up toward his head. Plaintiff complained that he could hardly breathe in that position. He flipped himself over on his back, and Defendants Holmes and Bebout immediately started kneeing him in his face and ribs. Plaintiff was already bleeding profusely from the earlier beating. Defendants Holmes and Bebout continued to inflict pain on Plaintiff by manipulating the handcuffs.

Plaintiff told Defendant Stephanie that he was having trouble breathing and that he thought the guards had broken his ribs. She yelled and became verbally abusive, telling Plaintiff

to "stop being an a\*\*hole" (Doc. 1, p. 12). She refused to examine his ribs for injuries and never checked his vital signs. She did apply alcohol to his bleeding and swollen face.

When Plaintiff left the infirmary, Defendants Holmes and Bebout took him to a shower holding cell. Defendant Holmes told Plaintiff that if he said anything about the beating and assault, he and Bebout would come back and finish the job, and it would make this beating seem like nothing (Doc. 1, p. 13). This threat put Plaintiff in fear for his life. He asserts that guards at Menard have "made it a practice and custom to systematically beat and assault inmates" on many occasions. *Id*. Plaintiff's clothing was taken and exchanged for a jumpsuit, and he was placed in isolation/segregation.

Later on the same evening of October 17, Internal Affairs Officer Anthony interviewed Plaintiff after learning of the assault. He took pictures of Plaintiff's injuries, but Plaintiff refused to tell him anything about the attack because of his fear of reprisal from Defendants Holmes and Bebout (Doc. 1, p. 14). Two days later, on October 19, 2013, Plaintiff was taken to the Health Care Unit after he complained of unbearable pain and difficulty breathing due to his injuries. Defendant Missy (Plaintiff refers to her both as a nurse and a med tech) examined and documented his injuries, and she gave him "low-grade" pain relief medication. *Id*. She scheduled him to see the physician's assistant and sent him back to his cell. The pain medication failed to give Plaintiff any relief. He saw the physician's assistant two days later and had x-rays taken. Plaintiff claims that he still suffers from severe depression, anxiety, and distress due to the attack by Defendants Bebout and Holmes (Doc. 1, p. 15).

Plaintiff was charged with two sets of disciplinary infractions as a result of the incidents on October 17, with the most serious charges being attempted assault. Defendant Bebout stated that when he and Defendant Ealy stopped Plaintiff on the way to the chow hall for having his hat

turned backwards, Plaintiff cursed him and lunged at him with a closed fist (Doc. 1-2, p. 18). Plaintiff was also charged with kicking at an officer when he rolled over on the examination table at the Health Care Unit (Doc. 1-2, p. 17). On October 25, 2013, Plaintiff had a hearing before the Adjustment Committee and was found guilty of the charges (Doc. 1, pp. 15-16). He claims the charges were fabricated and filed only to cover up the beating inflicted on him by Defendants Bebout and Holmes. Plaintiff was punished with two years in segregation, as well as two years of C-grade, commissary and visitation restrictions, and other unspecified disciplinary action. Plaintiff does not say whether his punishment included any loss of good conduct credits. Defendant Harrington signed off on the disciplinary reports, even though he allegedly was aware that prison guards regularly beat and assault inmates at Menard (Doc. 1, p. 17).

Plaintiff was transferred to Pontiac on November 21, 2013. Before he left Menard, Plaintiff filed emergency grievances directed to Defendant Warden Harrington to complaint about the beating, but these were deemed not to be emergency matters (Doc. 1, p. 15). He tried to file other grievances through the regular process, but they were either ignored or destroyed. Later, while at Pontiac, he submitted copies of his grievances to prison officials, but they were rejected as being filed outside the proper time frame (Doc. 1, p. 16).

Plaintiff seeks declaratory and injunctive relief as well as damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

> **Count 1:** Eighth Amendment claim against Defendants Ealy, Bebout, and Holmes for using excessive force against Plaintiff on or about October 17, 2013, and against Defendant Harrington for condoning the practice of using excessive force against Menard prisoners;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Defendant Nurse Stephanie, for refusing to examine Plaintiff for injuries immediately following the beating on October 17, 2013.

In addition, Plaintiff may proceed on the following state law claims:

> **Count 3:** Assault/battery claim against Defendants Ealy, Bebout, and Holmes for physically assaulting Plaintiff on or about October 17, 2013;
>
> **Count 4:** Claim for intentional infliction of emotional distress against Defendants Ealy, Bebout, and Holmes for beating Plaintiff on or about October 17, 2013, and against Defendant Holmes for threatening Plaintiff with bodily harm if he reported the assault;
>
> **Count 5:** Negligence claim against Defendants Stephanie and Missy for failing to properly treat Plaintiff for the injuries he suffered in the assault.

For the reasons set forth below, Plaintiff's allegations regarding mishandling of his grievances (**Count 6**) and deprivation of a liberty interest without due process (**Count 7**) fail to state a claim upon which relief may be granted and shall be dismissed. Likewise, Plaintiff fails to state a constitutional claim against Defendant Missy for deliberate indifference to his medical needs.

### Count 1 – Excessive Force

At this stage, Plaintiff has stated an Eighth Amendment claim against the three officers who allegedly assaulted and beat him. But the Court notes that he also wishes to pursue an excessive force claim against Defendant Harrington, the former warden.

Defendant Harrington did not participate in the beating, and a warden cannot be held vicariously liable in a civil rights case merely because he was the supervisor of the guards who allegedly violated a plaintiff's constitutional rights. *Sanville v. McCaughtry*, 266 F.3d 724, 740

(7th Cir. 2001) (citations omitted) (the doctrine of *respondeat superior* is not applicable to § 1983 actions). In this case, however, Plaintiff's allegations go beyond a simple supervisory liability theory. He asserts that Defendant Harrington *knew* that Menard guards engaged in a "practice and custom" of physically assaulting prisoners on a regular basis, and he allowed this conduct to continue unchecked. He specifically claims that Defendants Ealy, Holmes, and Bebout have "frequently beaten inmates including Dickey on numerous occasions" (Doc. 1, p. 18).

A defendant in a supervisory capacity may be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his or her subordinates. *Sanville*, 266 F.3d at 740 (discussing *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")). Based on this allegation, Plaintiff may also go forward at this time with his claim that Defendant Harrington bore some responsibility for the October 17 assault on Plaintiff by Defendants Bebout, Holmes, and Ealy.

**Count 2 – Deliberate Indifference to Serious Medical Needs**

Plaintiff alleges that immediately after the assault on October 17, 2013, Defendant Nurse Stephanie refused to examine him for a possible broken rib or other injuries. In addition, she ignored his complaints of pain and difficulty breathing and did almost nothing for Plaintiff, even though she saw Defendants Holmes and Bebout kneeing him while he lay on the examination table. At this stage, the complaint suggests that Defendant Stephanie may have been deliberately indifferent when she failed to ascertain whether Plaintiff was in need of medical treatment or pain relief, even though she could see his obvious injuries, heard him describe his symptoms, and saw him taking blows.

In contrast, Defendant Missy examined Plaintiff several days later when he complained of ongoing pain, referred him for another medical evaluation, and gave him medication for pain relief. The fact that the medicine was not effective does not mean she was deliberately indifferent to Plaintiff's medical condition. *See Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). The Eighth Amendment does not require prisoners to be given "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Defendant Missy took steps to address Plaintiff's medical needs, and her actions demonstrate that she was not deliberately indifferent to his condition. Accordingly, the deliberate indifference claim shall proceed only against Defendant Stephanie.

**<u>Count 5 – Medical Negligence</u>**

Plaintiff claims that the two health care provider Defendants (Stephanie and Missy) were negligent in rendering medical care to him after he was assaulted by the guards. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). This Court thus has supplemental jurisdiction over the state-law medical negligence claim, as well as the tort claims in Counts 3 and 4, pursuant to 28 U.S.C. § 1367. This is not the end of the matter, however, with respect to the medical negligence claim.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in

which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: (1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); or (2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report as to the merits of the claim shall be filed within 90 days after the filing of the complaint); or (3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written merits report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2013).[2] A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required merits certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). Whether such dismissal should be with or without prejudice, however, is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-

---

[2] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010. *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety). After *Lebron*, the previous version of the statute continued in effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010). The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section. *See* notes on Validity of 735 ILL. COMP. STAT. §5/2-622 (West 2013).

622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In this case, Plaintiff has failed to file the necessary affidavits or merit reports as to the conduct of Defendants Stephanie and Missy. Therefore, the claim in Count 5 is subject to dismissal. Plaintiff shall be allowed 35 days to file the required documents. Should Plaintiff fail to timely file the required affidavits or reports, Count 5 shall be dismissed without prejudice. *See* FED. R. CIV. P. 41(b).

**Dismissal of Count 6 – Mishandling of Grievances**

Plaintiff asserts that Defendant Harrington failed to properly address his emergency grievances, and he complains generally that the staff at Menard has made it a practice to destroy or lose inmates' grievances in order to cover up misconduct such as the assault at issue here (Doc. 1, p. 15). Moreover, according to Plaintiff, Defendant Harrington has allowed this practice to persist.

While the Court does not condone the sloppy or improper handling of inmate grievances, it is well established that mishandling or failure to respond to grievances does not implicate any constitutional right. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Thus, any failure to respond to or investigate Plaintiff's grievances, or any other action or inaction with regard to the grievance procedure on the part of Defendant Harrington or other prison officials, will not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."

*Antonelli*, 81 F.3d at 1430. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). For these reasons, Count 6 shall be dismissed with prejudice.

**Dismissal of Count 7 – Due Process Claim for Deprivation of Liberty Interest/Segregation**

Although Plaintiff asserts that he was denied a fair and impartial hearing on his disciplinary charges, he never mentions any procedural impropriety in the conduct of the hearing itself. It appears that the heart of Plaintiff's claim is that the original disciplinary charges were a complete fabrication, intended to cover up the misconduct of Defendants Bebout, Holmes, and Ealy (Doc. 1, pp. 15-16; 21-22). As such, his punishment of two years in segregation was also part of the effort to cover up the incident and thus was improperly imposed. He seeks an order to immediately release him from punitive segregation and to expunge the disciplinary convictions, as well as an award of damages for this deprivation of liberty (Doc. 1, pp. 25-26).

Initially, the Court cannot discern based on the complaint whether Plaintiff's request for damages is barred by *Heck v. Humphrey*, 512 U.S. 477, 487-89 (1994) (prisoner has no cause of action under § 1983 for damages arising out of a conviction or sentence unless the conviction/sentence is first reversed, expunged, or invalidated). *See also Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (the ruling in a prison disciplinary proceeding is a conviction for the purposes of *Heck* analysis). The complaint clearly states that Plaintiff's disciplinary "conviction" is still in effect, but he does not disclose whether any of his good conduct credits were revoked. If his punishment included the loss of good conduct credits, thus lengthening the term of his incarceration, *Heck* prevents him from bringing this claim arising from the disciplinary action in a civil rights case under § 1983. Instead, a challenge to the duration of his

confinement belongs in a habeas corpus action. *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Graham v. Broglin*, 922 F.2d 379, 380-81 (7th Cir. 1991). Further, before he may pursue a habeas case in federal court, a prisoner must first exhaust his available remedies in state court.[3] Under *Heck*, he may seek damages in a § 1983 action only after the disciplinary action which resulted in the loss of good conduct credits is first expunged or invalidated in a habeas or mandamus action.

On the other hand, if Plaintiff did not lose any good conduct credit when he was found guilty of the disciplinary charges, *Heck* will not bar his damages claim. "[W]here a plaintiff cannot obtain collateral relief to satisfy *Heck*'s favorable termination requirement, his action may proceed under § 1983 without running afoul of *Heck*." *Burd v. Sessler*, 702 F.3d 429, 435-36 (7th Cir. 2012) (citing *Simpson v. Nickel*, 450 F.3d 303, 307 (7th Cir. 2006); *DeWalt v. Carter*, 224 F.3d 607, 613, 616-18 (7th Cir. 2000); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999)). Nonetheless, even if *Heck* would not dictate the dismissal of Count 7, the complaint fails to state a claim that survives § 1915A review.

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). The Seventh Circuit reasoned that prisoners have a right "to be free from

---

[3] The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill.App. 1981)). The State of Illinois must first be afforded an opportunity, in a mandamus action pursuant to 735 Illinois Compiled Statutes 5/14-101 *et seq.*, to consider the merits of a claim for restoration of revoked good conduct credits.

arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

Plaintiff does not indicate that he failed to receive any of *Wolff*'s procedural protections in the disciplinary hearing. Further, the pleadings suggest that the adjustment committee had sufficient evidence before it (the statements of the guards who issued the disciplinary tickets) to sustain a finding of guilt, even though Plaintiff disputes their credibility. A disciplinary decision must be supported by "some evidence," but even a meager amount is sufficient to meet this requirement. *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994); *see also Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends").

Even if there had been a procedural flaw in the handling of the disciplinary charges, Plaintiff has not stated a claim for deprivation of a protected liberty interest as a result of his two-year confinement in segregation. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). While the length of Plaintiff's disciplinary segregation may point to a possible due process concern, equally relevant are the conditions of that confinement in segregation. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). The complaint contains no allegations that the conditions of Plaintiff's current confinement in segregation have imposed any atypical or significant hardship upon him, as compared with the conditions he would face were he in nondisciplinary segregation. *See Wagner*, 128 F.3d at 1175

("the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population").

For these reasons, the due process claim in Count 7 shall be dismissed for failure to state a claim upon which relief may be granted. Because of the possibility that the claim may now be *Heck*-barred (and that such bar may be removed if Plaintiff succeeds in invalidating the disciplinary conviction), the dismissal shall be without prejudice. *See Polzin v. Gage*, 636 F.3d 834, 839 (7th Cir. 2011) (discussed in *Gordon v. Miller*, 528 F. App'x 673, 674 (7th Cir. 2013)).

### Injunctive Relief

Whether or not Plaintiff prevails on his claims, at this time his requests for injunctive relief against the current Defendants appear to be moot. Plaintiff is no longer incarcerated at Menard or under the control of any Defendant. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Menard under the conditions described in the complaint would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)). If Plaintiff is not receiving proper medical care from officials at Pontiac, where he is now confined, he must seek redress through the grievance procedure in that institution.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

**Disposition**

  **COUNT 6** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNT 7** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

  **IT IS FURTHER ORDERED** that as to the medical negligence claims in **COUNT 5** against Defendants **STEPHANIE** and **MISSY**, Plaintiff shall file the required affidavits pursuant to 735 ILL. COMP. STAT. §5/2-622, within 35 days of the date of this order (on or before **November 20, 2014**). Further, Plaintiff shall timely file the required written report(s) of a qualified health professional, in compliance with §5/2-622. Should Plaintiff fail to timely file the required affidavits or reports, **COUNT 5** shall be dismissed without prejudice.

  The Clerk of Court shall prepare for Defendants **HARRINGTON, BEBOUT, HOLMES, EALY, STEPHANIE,** and **MISSY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

  With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address

shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court,

who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 16, 2014**

_____
NANCY J. ROSENSTENGEL
United States District Judge