## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MAECEO DICKEY,           )
                              )
          Plaintiff,    )
                              )
vs.                        )    Case No. 3:14-CV-1024-NJR-DGW
                              )
RICHARD HARRINGTON,    )
NICHOLAS BEBOUT, DAVID EALEY,    )
REBECCA STEFANI, and C/O HARRIS,    )
                              )
          Defendants.    )

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Now pending before the Court is the Motion for Partial Summary Judgment filed by Defendants Nicholas Bebout, David Ealey, Richard Harrington, and Richard Harris (Doc. 92). For the reasons set forth below, the motion is granted.

### INTRODUCTION

Plaintiff Maeceo Dickey, an inmate currently housed at Pontiac Correctional Center, brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983. Dickey is proceeding on four counts related to events that allegedly occurred at Menard Correctional Center in October 2013:

> **Count 1:** Eighth Amendment claim against Defendants Ealey, Bebout, and Harris for using excessive force against Plaintiff on or about October 17, 2013, and against Defendant Harrington for condoning the practice of using excessive force against Menard prisoners;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Defendant Stefani, for refusing to examine Plaintiff for

injuries immediately following the beating on October 17, 2013;

**Count 3:**     Assault/battery claim against Defendants Ealey, Bebout, and Harris for physically assaulting Plaintiff on or about October 17, 2013;

**Count 4:**     Claim for intentional infliction of emotional distress against Defendants Ealey, Bebout, and Harris for beating Plaintiff on or about October 17, 2013, and against Defendant Harris for threatening Plaintiff with bodily harm if he reported the assault.

Defendants seek partial summary judgment on the claims against Defendant Harrington in Count 1 and as to all Defendants on Count 4. Dickey was notified of the consequences of failing to respond to the Partial Motion for Summary Judgment (Doc. 94); nonetheless, he failed to file a response by the deadline of June 13, 2016. On August 9, 2016, Plaintiff filed an "Emergency Affidavit" in which he stated that he sent the attached "affidavits" in response to the Partial Motion for Summary Judgment to Defendants on May 25, 2016 (Doc. 102). But there is no indication that Plaintiff submitted the affidavits to the Clerk of Court for filing.[1] By failing to submit a response to the Court, Plaintiff failed to comply with Rule 5(d)(2) of the Federal Rules of Civil Procedure. Nevertheless, the Court construes the affidavits as a response to the Partial Motion for Summary Judgment.[2]

---

[1] As demonstrated by his numerous filings in August 2016, Dickey appeared to be under the false impression that by sending documents to Defendants, he was also filing them with the Clerk. As revealed by a list attached to his "Motion to Prove Affidavits Were Forwarded to Assistant Attorney General" (Doc. 106), Dickey's records show that he did not submit anything to the Clerk of Court at any time prior to at least August 5, 2016, well past his response deadline.

[2] Under Rule 56(c)(4), declarations or affidavits are appropriate vehicles for presenting evidence to the Court in support of or opposition to summary judgment as long as they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated" therein. FED. R. CIV. P. 56(c)(4). The two "affidavits" provided

BACKGROUND

On October 17, 2013, Dickey was waiting in line for food when Defendant Ealey pulled him to the side and told him to place his hands on his head. Dickey had forgotten that he was wearing his hat backwards, so he turned his hat around and proceeded to walk toward chow. Defendant Ealey told Dickey "no" and instructed him to go to his cell. Dickey asked if he would be able to get his tray, but was told no. When Dickey started to walk toward his cell, Defendant Ealey, along with Defendants Bebout and Harris, began manhandling him. According to Dickey, Defendants handcuffed him, put him on the floor, and hit and kicked him in the face, back, and ribs (Doc. 93-1, p. 3).

Defendants continued to assault Dickey as they took him downstairs and to the healthcare unit (Doc. 93-1, pp. 3-4). While there, Dickey claims, Defendant Stefani did not examine him, did not provide pain medication, did not address his complaints of difficulty breathing, and did not stop the "profuse" bleeding (*Id*. at 4). As a result, he suffered injuries to his rib, lower back, collar bone, and wrist (*Id*. at 5).

Defendants acknowledge that an incident occurred on October 17, 2013, but they deny using excessive force. Instead, Defendants claim that Dickey attempted to assault staff, and any force used was only necessary to regain control and prevent harm to self,

---

by Dickey state: "I Maeceo Dickey do hereby declare and affirm that the following information within this affidavit is true and correct in substance and in facts." They are not sworn, and they do not contain Dickey's signature, although one of the affidavits says, "Signed May 5, 2016."

The lack of a sworn affidavit would not pose a problem under Rule 56(c)(4) if the documents contained language stating that they were made under penalty of perjury. *See* 28 U.S.C. § 1746. Unfortunately, this specific language is not contained in the documents submitted by Dickey; as such, they may be insufficient to withstand a Rule 56 motion. *See Jajeh v. Cty. of Cook*, 678 F.3d 560, 567-8, nn. 3-4) (7th Cir. 2012) (noting that district courts addressing the issue have continued to require that unsworn declarations comply with § 1746 in order to be used to support or oppose a motion for summary judgment). Out of an abundance of caution, however, and only to the extent that the information contained in those documents is based on personal knowledge, the facts outlined will be considered.

staff, and other inmates (*See* Doc. 93-2, p. 7). Dickey admits that he received a disciplinary ticket for attempted assault as a result of this altercation, but he disputes the validity of this ticket (Doc. 93-1, p. 5).

Dickey contends that Warden Harrington had knowledge of the alleged assault based on his review of an emergency grievance that Dickey submitted on October 30, 2013 (Doc. 102, p. 7; Doc. 42-1, pp. 8-11). Dickey asserts, with no citation to any evidence, that Warden Harrington failed to thoroughly read, consider, and investigate his grievance (Doc. 102, p. 7). The evidence in the record reveals, however, that Warden Harrington not only read and denied Dickey's grievance, but also read the incident report generated after the October 17, 2013 event (Doc. 93-4, p. 2). There is no further evidence about the Warden's involvement in the underlying incident.

As a result of the alleged events, Dickey states that he suffers from "bad nightmares," he wakes up "in cold sweats in the middle of the night," and he fears being dismembered by correctional officers (Doc. 93-5, p. 6). As of the date of Dickey's response to interrogatories (which were served on March 10, 2015 (*Id.* at p. 18)), Dickey has received no treatment for mental disturbance. He instead indicated that his nightmares were manageable and that he would "survive whatever psychological drama because of my faith in God" (*Id.* at p. 16). While there are no medical records provided, Dickey states that a psychologist, Mr. McCormick, "acknowledged" a diagnosis of post-traumatic stress disorder (PTSD) and prescribed Remeron, an anti-depressant, in the summer of 2015 (Doc. 102, p. 3).

## DISCUSSION

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

**Count 1:      Eighth Amendment Claim Against Warden Harrington for Condoning the Practice of Using Excessive Force**

In Count 1, Dickey claims that Warden Harrington is liable "for condoning the practice of using excessive force against Menard prisoners." To recover damages for his

claim, Dickey must establish that Defendant Harrington was personally responsible for the deprivation of a constitutional right. *See Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995). While an official cannot be personally liable under a theory of *respondeat superior,* "'[a]n official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.'" *Id.* (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)). Furthermore, Dickey must show that there was "an official policy or custom that caused the injury." *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). He must point to evidence of an express policy, of a widespread practice that is so well-settled as to amount to a policy, or that the Warden had final policy-making authority or decision-making power with respect to the use of force as applied to Dickey. *Id.*

Here, Dickey has presented no evidence to support such a claim. There is no evidence of an express policy or a widespread practice, and there is no evidence that the Warden was personally involved in the events of October 17, 2013. Dickey also has not produced evidence that, as a policymaker, Warden Harrington directed Defendants to use excessive force against Dickey. Instead, Dickey argues that that there must be such a policy in play because (1) Warden Harrington signed the incident report after his assault and (2) Dickey has witnessed officers assaulting other inmates, so there must be a paper trail going back to Warden Harrington on those inmates as well (Doc. 93-1, p. 6). Dickey then makes the logical leap that because Warden Harrington must be receiving those incident reports, he also must be aware of these alleged assaults and therefore is allowing officers to "beat up on" inmates without consequence (*Id.*). Dickey's general

observations as to the "paper trail" going back to Warden Harrington and his bare assertions that other inmates have been assaulted, without more, fall short of demonstrating a pattern of events "indicative of an unconstitutional custom or practice." *See Palmer v. Marion Cty.*, 327 F.3d 588, 595 (7th Cir. 2003). *See also Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014) ("Speculation is no substitute for evidence at the summary judgment stage."); *Stephens v Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (noting that "inferences relying on mere speculation or conjecture will not suffice").

Therefore, Dickey's claim must fail as a matter of law. [3] Because Warden Harrington is entitled to summary judgment on Count 1 on this basis, the Court need not address the issue of qualified immunity.

**Count 4:     Intentional Infliction of Emotional Distress against Defendants Ealey, Bebout, and Harris**

In order to prevail on an intentional infliction of emotional distress claim, Dickey must show that the conduct complained of was "extreme and outrageous," that Defendants *intended* to inflict severe emotional distress, or that they should have known that their conduct would inflict such distress, and that Defendants actions in fact caused severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767 (1976) "The law intervenes only where the

---

[3] To the extent Dickey claims Warden Harrington exhibited deliberate indifference to his health and safety, no such allegation has been recognized in this matter. In any event, Dickey has not shown that Warden Harrington ignored his complaints. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005). Rather, the evidence reveals that Warden Harrington considered and rejected Dickey's grievance and reviewed the relevant incident report.

distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." *McGrath*, 533 N.E.2d at 809 (quoting Restatement (Second) of Torts § 46, comment j, at 77–78 (1965)). A defendant is not liable for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (quoting Restatement (Second) of Torts § 46, comment *d*, at 73 (1965)). Furthermore, "a defendant's awareness that the plaintiff is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity" may render conduct outrageous that would not otherwise be actionable. *Id.* at 811.

Here, Dickey has failed to produce evidence that Defendants Ealey, Bebout, and Harris intended to cause him emotional distress or that they should have known their conduct would cause such distress. There is simply no evidence of any intent on Defendants' part. There is also no showing that Dickey was particularly susceptible to emotional distress or that Defendants were aware that he was. *See Wall v. Pecaro*, 561 N.E.2d 1084-1088 (Ill. App. Ct. 1990). Nor is there evidence that Dickey in fact suffered from such distress. Dickey's assertions that he suffered manageable nightmares and wakefulness are insufficient to support a claim of intentional infliction of emotional distress. *Compare Orum v. Lucht*, 2014 WL 890012, *5 (Ill. App. Ct. 2014) (noting that allegations of "daily nausea, weight loss, insomnia, and recurrent nightmares" coupled with a lack of medical care are insufficient to support a claim that the plaintiff suffered from extreme emotional distress), *with Naeem v. McKesson Drug Co.*, 444 F.3d 593, 606 (7th Cir. 2006) (finding that anger, depression that isolates, suicidal thoughts, withdrawal

from relationships, loss of hair, and inability to breastfeed a child to be a sufficient showing of emotional distress even if no psychiatric care was sought). Dickey simply has presented no evidence that his distress was "so severe that no reasonable person could be expected to endure it." *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 942 (Ill. App. Ct. 1997).

Moreover, to the extent that he claims he is under a psychologist's care, that he has PTSD, and that he is taking an antidepressant, there is no competent evidence connecting this supposed diagnosis and prescription to the events underlying this action. *See Naeem*, 444 F.3d at 607 (noting that there was evidence linking PTSD and major depression to the events underlying the claim); *see also Estate of Gomes v. County of Lake*, 178 F.Supp.3d 687, 702 (N.D. Ill. 2016). Defendants are therefore entitled to judgment as a matter of law on Count 4.

## CONCLUSION

For the reasons set forth above, the Motion for Partial Summary Judgment filed by Defendants Nicholas Bebout, David Ealey, Richard Harrington, and Richard Harris (Doc. 92) is **GRANTED**. Summary Judgment is **GRANTED** in favor of Defendant Harrington and against Plaintiff Maeceo Dickey as to Count 1 and in favor of Defendants Ealey, Bebout, and Harris and against Plaintiff Maeceo Dickey as to Count 4. Defendant Harrington and Count 4 are **DISMISSED**.

In light of the foregoing, the following Counts remain for trial:

**Count 1:**     Eighth Amendment claim against Defendants Ealey, Bebout, and Harris for using excessive force against Plaintiff on or about October 17, 2013;

**Count 2:**     Eighth Amendment deliberate indifference claim against Defendant Stefani, for refusing to examine Plaintiff for injuries immediately following the beating on October 17, 2013;

**Count 3:**     Assault/battery claim against Defendants Ealey, Bebout, and Harris for physically assaulting Plaintiff on or about October 17, 2013.

Magistrate Judge Wilkerson is **DIRECTED** to recruit counsel for Plaintiff for trial. The Final Pretrial Conference and Trial will be reset once an attorney enters an appearance on behalf of Plaintiff. Since counsel will be recruited for Dickey, his *pro se* motion to exclude evidence at trial (Doc. 114) is **DENIED** without prejudice to counsel refiling if he or she deems it appropriate.

**IT IS SO ORDERED.**

**DATED:   March 31, 2017**

                                                                                       *Nancy J. Rosenstengel*
                                                                       _____
                                                                       **NANCY J. ROSENSTENGEL**
                                                                       **United States District Judge**